**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TONY GONZALEZ,

        Plaintiff,

v.

LENAWEE COUNTY
DISTRICT COURT,

        Defendant.

Case No.

Hon.

---

Fabiola Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Dr., Ste 3
Ann Arbor, MI 48108
(734) 663-7550
fgalguera@nachtlaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Tony Gonzalez, by and through his attorney, NACHTLAW, P.C.,

hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Tony Gonzalez is an individual residing in Adrian, Michigan,

Lenawee County.

2.      Defendant Lenawee County District Court is a governmental entity located at 425 N Main St #101, Adrian, Michigan 49221, and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b), employing more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year 42 USCS § 2000e.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 28 USCS § 1331, as this action arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

4.      This Court has supplemental jurisdiction over related state law claims, if any, pursuant to 28 U.S.C. § 1367.

5.      This Court has jurisdiction over claims brought pursuant to Title VII under 42 U.S.C. § 2000e-5(f)(3) 42 USCS § 2000e-5.

6.      Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as Defendant is located in this judicial district, the unlawful employment practices alleged herein occurred in this judicial district, and the employment records relevant to such practices are maintained and administered in this judicial district.

7.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights on December 19, 2024, alleging discrimination and retaliation based on

sex in violation of Title VII.

8.     The EEOC assigned Charge Number 471-2025-01756 to Plaintiff's charge.

9.     An EEOC Notice of Right to Sue was issued, and this matter is timely filed.

## FACTUAL ALLEGATIONS

### Background and Employment History

10.     Defendant originally hired Plaintiff in 1989 as a Probation Officer.

11.     Plaintiff remained employed with Defendant for several years, holding various positions, until his retirement on April 1, 2017.

12.     On February 2, 2020, Defendant re-hired Plaintiff as the Drug Testing Facility Coordinator.

13.     In this role, Plaintiff reported to the Court Administrator and managed the Drug Testing Facility.

14.     Plaintiff's employment with Defendant was governed by personnel policies found in the Lenawee County Personnel Handbook.

15.     In December 2020, Heidi Cannon was appointed Court Administrator and became Plaintiff's immediate supervisor.

16.     Prior to Plaintiff's retirement in 2017, Plaintiff had been Ms. Cannon's immediate supervisor.

17.     Until Plaintiff was terminated, he had not had any prior disciplinary actions against him at work.

**Advocacy for Male Employee and Resulting Retaliation**

18.     In October 2022, Plaintiff advocated for the hiring of Kyle O'Connor, a male employee working under Plaintiff's supervision in the Drug Testing Facility, for a vacant Probation Officer position.

19.     Mr. O'Connor had already been working for Plaintiff for two years and possessed a Criminal Justice degree.

20.     During the hiring process for the Probation Officer position, Plaintiff inquired why Mr. O'Connor had not been selected for an interview.

21.     During a telephone conversation on October 21, 2022, Plaintiff questioned Ms. Cannon about Mr. O'Connor not being interviewed and stated that the failure to interview him was "borderline not being an equal opportunity employer" and suggested it was "because of what he looks like".

22.     Ms. Cannon ended the call and verbally reprimanded Plaintiff for his tone.

23.     Ms. Cannon subsequently issued Plaintiff a written reprimand for the October 21, 2022 telephone conversation, which was later changed to a verbal reprimand after Plaintiff raised concerns about County policies not being followed.

24.     Ms. Cannon's treatment of Plaintiff changed after the October 2022 incident regarding the O'Connor hire situation.

25.     Ms. Cannon required Plaintiff to write down every task completed on his time sheet for over two years.

26.     Ms. Cannon directed Plaintiff to drop off timesheets at the courthouse only

on Mondays, Wednesdays, and Fridays, rather than every day.

27. When Plaintiff came to the courthouse on a Thursday to ensure timely submission of employee timesheets for payroll, Ms. Cannon questioned why he had not followed her directive.

28. Ms. Cannon advised she would review the restricted schedule after thirty days, but this review never happened.

29. Upon information and belief, no female employees were subjected to similar restrictions on when they could enter the courthouse or similar scrutiny of their timesheets.

**February 2024 Invoice Dispute**

30. On February 9, 2024, Ms. Cannon emailed Plaintiff and Financial Clerk Melissa Wahl about an invoice Plaintiff had submitted that was several months overdue.

31. In the email, Ms. Cannon reminded Plaintiff to identify the expense account number when submitting invoices.

32. On February 12, 2024, Ms. Cannon sent Plaintiff another email clarifying the account number to be used and reminding him again to use the correct account number.

33. Ms. Wahl responded that she had not been given any account numbers for the Drug Testing Facility's invoices and that Plaintiff would need to give her the specific account numbers.

34. Over the following days, Plaintiff, Ms. Cannon, and Ms. Wahl continued

to email about the need for Plaintiff to identify account numbers on invoices he submitted.

35.     On Friday, February 16, 2024, Plaintiff emailed Ms. Cannon and Ms. Wahl stating he would "not take blame for money coming out of the wrong account".

**February 16, 2024 Incident**

36.     On February 16, 2024, Plaintiff stopped by the District Court Traffic Division to discuss using an invoice to pay for lab confirmations.

37.     Plaintiff approached Ms. Wahl and started discussing the situation, trying to ascertain what was going on with the delayed payment.

38.     All individuals working in the Traffic Division were women, and Plaintiff's supervisor, Ms. Cannon, was also a woman.

39.     At no point was Plaintiff yelling or being aggressive; he was simply trying to get to the bottom of the situation since it affected his work.

40.     Plaintiff went to the courthouse that morning to give Ms. Wahl money collected from drug testing and, after giving her the money, told her in a calm voice he heard the wrong account was being used to pay for lab confirmations.

41.     Ms. Wahl's response was that she didn't know which account to use, so she took payment out of the medical supply account.

42.     Plaintiff was surprised because Ms. Wahl had been processing these invoices and had ample opportunity to ask him or Ms. Cannon about the correct account.

43.     At no time did Plaintiff raise his voice, nor was he confrontational or

aggressive with Ms. Wahl.

44.     Plaintiff worked down the hall from Ms. Wahl for many years and never had any issue with her.

45.     The atmosphere didn't change until another clerk summoned Ms. Cannon from her office, claiming there was a problem.

46.     When Ms. Cannon arrived at Ms. Wahl's desk as Plaintiff was standing there, she accused Plaintiff of becoming confrontational and aggressive, stating Plaintiff pointed his finger at Ms. Wahl.

47.     This accusation is false.

48.     Ms. Cannon took issue that Plaintiff had questions and escalated the matter by becoming defensive and rude.

49.     Ms. Cannon was terse with Plaintiff and became rude, levying threats of writing him up and demanding he meet with her in her office.

50.     Plaintiff calmly told Ms. Cannon he was trying to rectify the billing issue so it didn't happen again.

51.     Ms. Cannon accused Plaintiff of being unprofessional and disrespectful.

52.     Plaintiff told Ms. Cannon that the conversation was with Ms. Wahl, given that Ms. Cannon was escalating the interaction in an exceedingly negative way.

53.     Ms. Cannon threatened to go back to her office and write Plaintiff up.

54.     Ms. Cannon directed Plaintiff to her office.

55.     Given that the conversation was turning unproductive and Plaintiff had to

pick up his small grandchildren (ages six and ten) from their bus stop, Plaintiff indicated he could not meet at that moment.

56.     Plaintiff only had ten minutes to pick up his grandchildren at their bus stop.

57.     Plaintiff did not call Ms. Cannon ridiculous.

58.     Plaintiff left the Traffic Department and walked down the hall to the Probation Department to get his bag.

59.     Judge Morgan was in the department and probably observed the tail end of the conversation.

60.     As Plaintiff was leaving the Probation Department and walking down the hall, he saw the door to the Traffic Department open, and a clerk indicated to him that Judge Morgan and Ms. Cannon wanted to see him in Ms. Cannon's office.

61.     Plaintiff told the clerk he couldn't stay as he had to pick up his grandchildren from the bus and to please relay that message.

62.     That same afternoon, around 1:30 p.m., Plaintiff called Judge Morgan's office, explained again why he left, and apologized.

63.     Judge Morgan thanked Plaintiff for calling.

## February 23, 2024 Termination

64.     On February 23, 2024, a day Plaintiff was not scheduled to work, Ms. Cannon called Plaintiff at his house at 12:13 p.m. demanding that he meet with her at 12:45 p.m.

65.     Plaintiff explained that not only was he not on duty, but he did not have

enough time to make it to the office by 12:45 p.m. due to pre-planned travel/plans with his wife.

66. Ms. Cannon's response was to continue to demand the meeting at that time instead of finding a common time that worked while Plaintiff was at work.

67. Plaintiff did not refuse to meet with Ms. Cannon to discuss the matter; it was a scheduling issue she was not interested in working through.

68. Plaintiff suggested meeting on Monday, but Ms. Cannon said she would be at a conference.

69. Plaintiff tried to suggest another day the following week, but Ms. Cannon refused, stating it had to be that same day for an unexplained reason.

70. Plaintiff tried to ask Human Resources for help, but they simply said Ms. Cannon was his supervisor.

71. Right after the conversation with Ms. Cannon, Plaintiff called Ms. Bev Ahlers, HR Director, and asked why Ms. Cannon wanted to meet with him at 12:45 on such short notice.

72. Plaintiff explained it was too short notice, he was off-duty, and he felt as if Ms. Cannon was depriving him of due process.

73. Ms. Ahlers's response was, "Ms. Cannon is your immediate supervisor".

74. Ms. Ahlers asked if Plaintiff would be at the 12:45 meeting and he told her no, for the reasons mentioned above.

75. Plaintiff also told Ms. Ahlers he suggested other meeting options to Ms.

Cannon, but they were ignored.

76.     Plaintiff was terminated on February 23, 2024 by Ms. Cannon via email.

77.     The termination notice stated that on October 21, 2022, Plaintiff violated the personnel handbook regarding "personal conduct: employees should conduct themselves, at all times in a professional respectful manner".

78.     The termination notice stated that on February 16, 2024, Plaintiff violated the same policy as well as the anti-harassment policy and refused a meeting with the Chief Judge and his immediate supervisor.

79.     The termination notice stated that on February 23, 2024, Plaintiff refused to meet regarding the events on February 16, 2024.

80.     The termination notice also included an attachment with false and inaccurate information, such as purported "numerous verbal conversations" regarding Plaintiff's "disrespectful behavior and blatant insubordination".

81.     These alleged numerous verbal conversations did not occur, and Plaintiff had never been written up on such serious accusations.

82.     Following Plaintiff's termination, Defendant replaced him with a male employee.

83.     Upon information and belief, female employees were not subjected to the same level of scrutiny, restrictions, or discipline for similar conduct.

84.     Upon information and belief, Plaintiff did not behave any differently than female staff, yet he was held to a different standard.

85. Plaintiff was painted as "difficult" and "aggressive" no matter how hard he tried to address matters.

86. Despite repeatedly asking for all complaints and statements made against him and being assured that there were no other statements against him, Plaintiff later discovered through the EEOC process that there was a signed statement by Ms. Wahl as well as a complaint email that had been withheld from him.

87. Plaintiff specifically asked if there were other complaints against him and was told no.

88. Of concern to Plaintiff, he was told on February 16, 2024 that there were additional statements allegedly from two female coworkers making complaints against him, but these were never shown or provided to him.

## COUNT I
### Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq.*

89. Plaintiff incorporates the preceding allegations as if fully restated herein.

90. At all relevant times, Defendant employed greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b) and (f).

91. Title VII prohibits discrimination in employment on the basis of sex.

92. Plaintiff was qualified for his position as a Drug Testing Facility Coordinator.

93. Defendant subjected Plaintiff to intentional discrimination based on his

sex, including but not limited to by terminating his employment, while also treating female coworkers more favorably.

94. Bias against men was a motivating factor behind Defendant's actions.

95. Defendant applied its policies and procedures in a manner that discriminated against Plaintiff on the basis of sex, causing him serious and unjustified damage.

96. Based on the foregoing, Plaintiff was subjected to biased, prejudiced, and unfair treatment in violation of Title VII.

97. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling him to punitive damages.

98. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered significant harm, injury, and damages, including, but not limited to, removal from his position; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT II
### Retaliation in Violation of Title VII
### 42 U.S.C. § 2000e *et seq.*

99. Plaintiff incorporates the preceding allegations as if fully set forth herein.

100. At all relevant times, Defendant was an employer with greater than 15 employees, and Plaintiff was an employee covered by and within the meaning of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

101. Plaintiff was subjected to adverse employment actions, up to and including termination.

102. Defendant's actions were motivated by unlawful retaliation against Plaintiff because of his protected activity.

103. But for Plaintiff's protected activity, he would not have been terminated.

104. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling him to punitive damages.

105. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered significant harm, injury, and damages, including, but not limited to, removal from his position; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT III
### Sex Discrimination in Violation of the ELCRA

106. Plaintiff incorporates the preceding allegations as if fully set forth herein.

107. At all relevant times, Defendant was Plaintiff's employer, and Plaintiff was an employee within the meaning of and covered by the ELCRA.

108. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his sex.

109. Defendant subjected Plaintiff to adverse employment actions, including

but not limited to terminating his employment, because of his sex.

110. Any nondiscriminatory basis purported by Defendant for Plaintiff's termination is a pretext for discrimination.

111. But for Plaintiff's gender, Defendant would not have subjected him to such adverse employment action.

112. Defendant acted willfully and intentionally when it violated the ELCRA.

113. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered significant harm, injury, and damages, including, but not limited to, removal from his position; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## COUNT IV
### Retaliation in Violation of the ELCRA

114. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

115. At all relevant times, Defendant was Plaintiff's employer, and Plaintiff was an employee within the meaning of and covered by the ELCRA.

116. Plaintiff engaged in protected activity, *inter alia*, when he reached out to HR for help with the treatment he was receiving.

117. Defendant discriminated and retaliated against Plaintiff because of this protected activity.

118.   But for Plaintiff's protected activity, Defendant would not have subjected him to such adverse employment action.

119.   Defendant acted willfully and intentionally when it violated the ELCRA.

120.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered significant harm, injury, and damages, including, but not limited to, removal from his position; loss of income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

a. A declaration that Defendant violated Plaintiff's rights under the ADA, Title VII, the PWDCRA, the ELCRA, and Michigan law;

b. Back pay, front pay, lost benefits, and all other economic damages;

c. Compensatory damages for emotional distress, humiliation, reputational harm, medical harm, and other non-economic injuries;

d. Punitive damages to the extent available under federal law;

e. Exemplary damages to the extent available under Michigan law;

f. Pre-judgment and post-judgment interest;

g.  Reasonable attorney fees, expert fees, and costs to the extent allowed by law;

h.  Expungement or correction of Defendant's records concerning the false
    allegations and termination;

i.  Conversion of Plaintiff's termination to a resignation or other equitable relief
    necessary to remedy the harm caused by Defendant's conduct;

j.  Reinstatement or front pay in lieu of reinstatement;

k.  Any other legal or equitable relief the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff Tony Gonzalez, by and through his attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues in the above-captioned cause of action.


Respectfully submitted,

NACHTLAW, P.C.

<u>/s/ Fabiola A. Galguera</u>
Fabiola A. Galguera
Attorney for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
Fgalguera@nachtlaw.com

Dated: June 25, 2026